UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2009 SEP -9  A 9: 47

**************************************

LWIZA WAMALA
Plaintiff

v.                                          Civil Action No._____

CITY OF NASHUA; NASHUA POLICE DEPARTMENT;      /DEMAND FOR JURY TRIAL/
BERNARD STREETER; DONALD CONLEY; TIMOTHY
HEFFERAN; JONATHAN LEHTO; SCOTT HOWE;          PJ #350
THOMAS BERGERON; All Supervisors* of          49 001830
LEHTO; All Supervisors* of Bergeron;          # 146
Defendants
**************************************

(Supervisors* : Names will be identified in course of discovery)


## COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C.S. §1983


## I PARTIES AND ADDRESSES

1. Plaintiff LWIZA WAMALA, address is 20 Marshall Terrace, Lowell MA 01854.

2. Defendant CITY OF NASHUA, address is City HAll, 229 Main Street, Nashua NH 03061.

3. Defendant NASHUA POLICE DEPARTMENT, address is 0 Panther Drive, Nashua NH 03061.

4. Defendant BERNARD STREETER, Mayor of Nashua, can be served at City Hall,
    229 Main Street, Nashua NH 03061.

5.Defendant DONALD CONLEY, Nashua Police Chief to be served at Nashua Police

    Department, 0 Panther Drive, Nashua NH 03061.

6. Defendant TIMOTHY HEFFERAN, Nashua Police Chief to be served at Nashua

    Police Department, 0 Panther Drive NH 03061.

7. Defendant JONATHAN LEHTO, detective Nashua Police Department, to be served

    at 0 Panther Drive, Nashua NH 03061.

8. Defendant THOMAS BERGERON, detective Nashua Police Department, to be served

    at 0 Panther Drive, Nashua NH 03061.

9. Defendant SCOTT HOWE, Supervisor of detectives Nashua Police Department,

    to be served at, 0 Panther Drive, Nashua NH 03061.


(Supervisors*: to be served at, 0 Panther Drive, Nashua NH 03061.)

1

-2-

**II  JURISDICTION**

10. Under 28 U.S.C.S. §1343, the U.S. District Court has original jurisdiction to commence the instant civil action filed by the plaintiff:

> i) to seek damages for deprivation of civil rights and priviledges recoverable under 42 U.S.C.S. §1983 and,
>
> ii) to redress the deprivation of plaintiff's rights, priviledges and immunity secured by the Constitution of United States for equal rights of all persons within the jurisdiction of the United States recoverable under 42 U.S.C.S. §1983 and finally,
>
> iii) to recover damages and other relief deemed just for violation of the plaintiff's Federal Constitutional rights by officials acting under color of law, in accordance to 42 U.S.C.S. §1983.

**III  CAUSE OF ACTION**

11. The instant complaint alleges that the named defendants, individually and officially acting under the color of law, willfully and maliciously or with deliberate indifference violated numerous plaintiff's Federal Constitutional rights by the following conduct:

> i) Unreasonable seizure of the plaintiff for 21 hours; CLAIM 1
>
> ii) Denying plaintiff use of bathroom for several hours; CLAIM 2
>
> iii) Dictating to plaintiff what to speak; CLAIM 3

iv) Interfered with the plaintiff's right to give truthful testimony; CLAIM 4

v) Coerced plaintiff and obtained involuntary and false statements which were used against plaintiff in a criminal trial; CLAIM 5

vi) Provided no food to plaintiff while she was under illegal detention at Nashua Police Station; CLAIM 6

vii) Emotionally tortured plaintiff by yelling and screaming right in plaintiff's face and also intimidated and threatened plaintiff with deportation. Defendants also forced plaintiff to make false and

2

stigmatizing statements; CLAIM 7

viii) Libel, slander and defamation to plaintiff's name; CLAIM 8

ix) Unreasonable search of plaintiff and invasion of privacy; CLAIM 9

x) Denied plaintiff liberty to go to school; CLAIM 10

## IV  FACTS

12. The plaintiff provided the detailed facts in the sworn and signed
    affidavit filed with this complaint. See AFFIDAVIT OF LWIZA WAMALA.

13. The plaintiff will only briefly repeat facts for the specific claims
    and also add facts obtained from court proceedings of State v. Wamala.

14. The plaintiff was unreasonably held (illegal) detention for a period
    of 21 hours on 9/12/2006.

15. Plaintiff first made her request to leave to Det. Bergeron. Det. Bergeron
    although sympathetic did not allow her to leave instead told the plaintiff
    that it was not upto Det. Bergeron to allow plaintiff to leave.

16. Plaintiff next made her repeatedly request to leave to Det. Lehto who
    denied her to leave Nashua Police Station.

17. Defendant Lehto emotionally tortured plaintiff by yelling and
    and screaming right in plaintiff's face.

18. Defendant Lehto tortured plaintiff by depriving her use of bathroom.

19. Defendant Lehto dictated to plaintiff what to speak.

20. Defendant Lehto intimidated, threatened and emotionally tortured the
    plaintiff to get involuntary and false statements. Defendant Lehto
    threatened the plaintiff with deportation if plaintiff did not say what
    Det. Lehto wanted, which was the false statement that "palintiff had sex
    with her father."

21. Defendant Lehto unreasonably searched and invaded the privacy of the plainiff,
    by collecting DNA samples against her will.

22. After DNA samples were taken and two false statements were recorded, plaintiff again requested to leave believing that since she had succumbed to defendant's demands she would be allowed to leave. Plaintiff was instead taken to a different room.

23. The plaintiff was detained a total of 21 hours. She was released 9:00pm at night and was escorted out with her sister Theresa.

24. While detained at Nashua Police Station, the plaintiff was not given any food.

25. While under detention the plaintiff asked defendant Lehto if she could be released and be able to go school, defendant denied her request.

26. Defendant Lehto provided the false statement to his supervisor Scott Howe.

27. Defendant Lehto and Howe distributed the false statements to the Hillsborough County Prosecutor's Office and were used to generate indictments in State v. Wamala criminal case. See A.1 attached.

28. Defendants Lehto and Howe distributed the false statements to the public and to the media necessitating a GAG ORDER MOTION. See A.16-18.

29. The false statements are widely circulated on the internet.

30. The plaintiff is in continuing agony because of the torturous experience at the hands of Nashua Police and the libelous statements defendants generated which the plaintiff encounters almost on daily basis.

31. At trial, the false statements were used against the plaintiff's truthful testimony.

32. The emotional torture conducted by Nashua police damaged the plaintiff's school performance. She had to drop out and now she is struggling by taking part-time courses.

33. Ever since the traumatic experience at Nashua Police Station, the sight of any police officer evokes in the plaintiff feelings of police officers of being villains, vindictive and evil people who can force a daughter to say she had sex with her father. This kind of behavior shocks my conscience.

4

## Facts to show defendant Lehto's evil intent

34. Dr. Wamala denied sexually assaulting his daughters. A.31-40

35. Jacob Wamala denied ever seeing or suspecting sexual assault of his father
    (Dr. Wamala) against his sisters.(Jessica, Theresa, Lwiza). A.45-45a

36. Lwiza denied ever being assaulted and was in disbelief of Jessica's
    allegations of sexual assault. A23-24.

37. As of 6:50am 9/12/2006, defendant Lehto confirms that the investigation
    had stalled in consultation with his supervisors that there was no probable
    cause to arrest Dr. Wamala, Jessica's allegations were just he said/ she
    said that kind of thing. A.39-41.

38. Defendant Lehto went to Lwiza between 8:00am and 10:00am tortured her
    to get a statement from her in order to fulfill the necessary policies
    and procedures to be able to arrest Dr. Wamala, that was the evil intent.
    See A.29-30, A.40-41.


## V LEGAL CLAIM

39. In 42 U.S.C.S. §1983 actions, courts look at two steps, first, to identify
    the exact countours of the underlying right violated and, second, the
    right alleged was clearly established. Graham v. Connor, 490 U.S. 386, 394 (1989).

40. The plaintiff asserts that when defendants Bergeron and Lehto denied
    her to leave Nashua Police Station and the plaintiff was illegally held
    21 hours, defendants violated the plaintiff's 4th Amendment right
    prohibiting "unreasonable seizure of a person." U.S. Const. Amend. IV.

41. The plaintiff relies on Terry v. Ohio, 392 U.S. 1 (1968); Florida v. Royer,
    460 U.S. 491 (1983); Brower v. County of Inyo, 489 U.S. 593, 596 (1989),
    Graham v. Connor, Supra; Franklin v. Foxworth, 31 F.3d 873 (9th Cir. 1994).

42. 'A "seizure" triggering the Fourth Amendment protections occurs when
    government actors have by physical force or show of authority...in some

way restrained the liberty of a citizen.' Terry v. Ohio; Supra. See also
Brower v. County of Inyo, Supra. In the instant complaint defendants Lehto
and Bergeron used their authority to restrain the plaint's liberty to
leave Nashua Police Station on 9/12/2006.

43. It is well established that 'Fourth Amendment prohibits against
unreasonable seizures of the person and the Eighth Amendment ban on cruel
and unusual punishments, which are the two primary sources of constitutional
protection against government conduct.' Graham v. Connor, Supra.

44. In the instant complaint, it is clear as cited in paragraphs 40, 41,
42 and 43 that defendants Bergeron and Lehto had clear notice that their conduct
violated the plaintiff's constitutional rights and is actionable under
42 U.S.C.S. §1983. Therefore defendants Lehto, Bergeron and all defendants
are liable as stated in CLAIM 1.

45. The plaintiff asserts that defendant Lehto violated her 8th and 14th
Amendment rights guaranteeing her protection from 'cruel and unusual
punishment' and punishing her by depriving her use of bathroom without
due process. U.S. Const. Amend. VIII and XIV.

46. When defendant Lehto detained the plaintiff at Nashua Police Station
restraining her liberty to leave and he also denied her use of bathroom
that amounted to cruel and unusual punishment specifically prohibited
by the 8th Amendment. See Hope v. Pelzer, 536 U.S. 730 (2002) (Denial of
use of bathroom is constitutional violation under the 8th Amendment).

47. The plaintiff relies on Block v. Rutherford, which sets a claim of
punishment without due process. The U.S. Supreme Court held that, 'pretrial
detainees claiming that they were subjected to "punishment" without due
process to prove intent to punish or show that the challenged conduct
is not reasonably related to aligimate goal from which an intent to punish
may be infered. Id. See also Bell v. Wolfish, 441 U.S. 520, 539 (1979).

See also <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986). In the instant case,
Det. Lehto heard the cries of the plaintiff several times requesting use
of bathroom. The plaintiff indicated that she was feeling uncomfortable,
when defendant Lehto refused to grant plaintiff use of the bathroom the
intention was to punish. Furthermore the defendant made it clear that
the plaintiff will continue to suffer the uncomfortability of not being
able to relieve herself until she tells him what he wanted to hear, see
paragraph 57 of AFFIDAVIT OF LWIZA.

48. The U.S. Supreme Court further stated that "among 'unnecessary and wanton'
    inflictions of pain are those that are 'totally without penological
    justification.'" <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981). <u>Hope v. Pelzer</u>,
    536 U.S. at 737. In the instant case denying the plaintiff use of bathroom
    for several hours is "totally without penelogical justification" to be
    exact it is without justification at all since the plaintiff was not
    not supposed to be punished or imprisoned.

49. The U.S. Supreme Court  quantified denial of bathroom use to be "gratuitous
    infliction of 'wanton and unnecessary' pain." <u>Id</u> at 748. In <u>Hope</u> the
    Court wrote, 'deprivation of bathroom breaks that created a risk of
    particular discomfort and humiliation...This punitive treatment amounts
    to gratuitous infliction of "wanton and unnecessary"pain that our precedent
    [<u>Trop v. Dulles</u>, 356 U.S. 86, 100 (1958)] prohibits. <u>Id</u>.

50. In the instant complaint Det. Lehto and the Nashua Police Department
    inflicted wanton and unncessay pain by denying plaintiff to use the
    bathroom for several hours. Paragraphs 46, 47, 48 and 49 put all
    defendants on notice that their conduct is actionable under 42 U.S.C.S.§1983.
    Therefore defendant Lehto and all defendants are liable as stated in
    CLAIM 2.

51. The plaintiff asserts that defendant Lehto on 9/12/2006 violated her
    First Amendment right of 'freedom of speech' when defendant Lehto
    dictated to plaintiff what to speak. U.S. Const. Amend. I.

52. The plaintiff relies on Ashcroft v. Free Speech Coalition, 535 U.S. 234
    246 (2002).

53. The U.S. Supreme Court established that 'as a general principle, [1st Amend.]
    bars government [officials] from dictating what we see or read or speak
    or hear." Ashcroft, 535 U.S. at 246 (emphasis added).

54. The plaintiff told defendant Lehto that she has never had any sexual
    contact with her father. When defendant Lehto dictated to plaintiff that
    she had to make 'the untrue incriminating statements' that 'she had sex
    with her father' defendant Lehto violated the plaintiff's First Amendment
    right. Defendant Lehto already knew what the true statement was as he
    put it in the first part of his report, see A. 26. Defendant Lehto forced
    the plaintiff to make the untrue statement and defendant Lehto recorded
    it. See A.26.

55. Ashcroft put defendant Lehto on clear notice that he could not dictate
    to plaintiff what to speak and his conduct is actionable under 42 U.S.C.S
    §1983. Therefore defendant Lehto and all defendants are liable as stated
    in CLAIM 3.

56. The plaintiff asserts that defendant Lehto violated the plaintiff's
    First Amendment right to truthful testimony. Defendant Lehto illegally
    obtained false statements from the plaintiff, and the false statement
    was used against plaintiff's truthful testimony. U.S. Const. Amend. I.

57.    ,. The plaintiff relies on Smith v. Hightower, 693 F.2d 359, 368 (5th
    Cir. 1982) ("First Amendment values would not be served if the fear of
    [government] actions effectively muzzled witnesses testifying.").

58. The plaintiff further relies on <u>Melton v. Oklahoma City,</u> 879 F.2d 706, 714 (10th Cir. 1989) (Giving testimony is protected by the First Amendment).

59. <u>Smith</u> and <u>Melton</u> establish the right to testify truthfully without interferance.  In the instant case, the plaintiff provided the truthful statement to defendant Bergeron. However defendant Lehto driven by evil intent forced a false statement out of the plaintiff, defendant Lehto made sure that the false statement was available at trial to interfere with the plaintiff's right to provide truthful testimony.  As spelt out in paragarphs 56, 57, 58 and 59 defendant Lehto had clear notice that his conduct violated the plaintiff's First Amendment right to providing truthful testimony. Therefore defendant Lehto and all defendants are actionable under 42 U.S.C.S. §1983 and are liable as stated in CLAIM 4.

60. The plaintiff asserts that defendant Lehto violated her Fifth Amendment right prohibiting "in any criminal case to be a witness against [oneself]." <u>U.S. Const. Amend. V.</u>

61. Before relying on any case law the plaintiff notes that, mostly, the development of constitutional law in the Fifth Amendment violation has been involving suspects, who are coerced and are themselves brought to trial.

62. The plaintiff asserts that this is a viable claim by virtue of the text in the Fifth Amendment stating "in any criminal case to be a witness agaist himself."

63. Now the plaintiff proceeds to the relevant case law that provided notice that the conduct of the defendants was unlawful. The plaintiff relies on <u>Weaver v. Brenner,</u> 40 F.3d 527 (2nd Cir. 1994) and <u>Chavez v. Martinez,</u> 538 U.S. 760 (1994).

64. In <u>Weaver,</u> the Second Circuit held, "use or derivative use of a compelled statement at any criminal proceeding...violates the declarant's rights under the Fifth Amendment." <u>Weaver v. Brenner,</u> 40 F.3d at 535.

65. The plaintiff further relies on the multiple opinions issued in Chavez by the U.S. Supreme Court, all taken together makes this claim a viable one.

66. In a set of opinions on the Fifth Amendment issue, the U.S. Supreme Court held that coercive police questioning does not violate the Fifth Amendment **absent use** of the statements in a criminal case. Se Chavez v. Martinez, 538 U.S. at 766. (emphasis added). "We fail to see how based on the text of the Fifth Amendment, Martinez can allege a violation of this right, since Martinez...was never compelled to be a witness against himself in a criminal case." Id(Thomas, J., joined by Rehnquist, C.J., O'Connor, J., and Scalia,J.). "The Fifth Amendment was not violated unless and until allegedly coerced statements were used against the [person] in a criminal case." Id at 799 (Kennedy, J.).

67. The plaintiff further relies on the Sixth Circuit ruling, "In actions brought under §1983 for alleged violations of the [Fifth Amendment], it is the person who wrongfully coerces or otherwise induces the involuntary statement who causes the violation of the [Fifth Amendment] privilege." McKinley v. Mansfield, 404 F.3d 418, 439 (6th Cir. 2005).

68. The Second Circuit makes a compelling case for the plaintiff why this particular claim should go to the jury at trial. The Second Circuit held that "[a] reasonable fact finder could conclude that it was not reasonable for an officer to believe that it was constitutional to coerce a [statement] and then hand that information to a prosecutor--for use in a criminal case." Higazy v. Templetor, 505 F.3d 161, 174-175 (2nd Cir. 2007).

69. The plaintiff asserts that law prevailing at the time when the coerced statements were used **in a criminal trial against** the plaintiff in September 2007, the defendants in this case had clear notice that the plaintiff's Fifth Amendment right would be violated and the defendants' conduct is actionable under 42 U.S.C.S. §1983. Therefore defendant Lehto and all defendants are liable as stated in CLAIM 5.

70. The plaintiff asserts that defendant Lehto violated her 8th and 14th Amendment right guaranteeing her protection from 'cruel and unusual punishment' and punishing her with food deprivation without due process. U.S. Const. Amend. VIII and XIV.

71. When defendant Lehto and his colleagues detained the plaintiff at Nashua Police Station for 21 hours and did not provide food to the plaintiff, defendant Lehto and Nashua Police Department transgressed the substantive limits set by the Due Process Clause. The plaintiff was being punished by food deprivation which is cruel punishment prohibited by the 8th Amendment. "The Eighth Amendment as made applicable to the States through Fourteenth Amendment prohibits "cruel and unusual punishment'" Robinson v. California, 370 U.S. 660 (1962).

72. The plaintiff specifically relies on Deshaney v. Winnebago, 489 U.S.189, 199-200 (1989). In Deshaney the U.S. Supreme Court held that transgressing constitutional rights does not end when government actors hold a person against their will, the Court further held, "[W]hen the State takes a a person and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being. The rationale for this principle is simple enough when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself at the same time fails to provide for his basic needs...e.g. food...it transgresses the Substantive limits on the State's action set by the Due Process Clause." Id.

73. In the instant complaint defendant Lehto and Nashua Police Department did not provide food to the plaintiff for the entire 21 hours she was being held. Paragraphs 70, 71 and 72 indicate that defendants in this lawsuit had clear notice that not providing food to the plaintiff is a violation and actionable under 42 U.S.C.S. §1983. Therefore defendant Lehto and all defendants named in in this lawsuit are liable as stated in CLAIM 6.

11

12

74. The plaintiff asserts that defendant Lehto tortured and coerced plaintiff into making false and stigmatizing statements. The plaintiff further asserts that defendant Lehto's conduct violated her 8th and 14th Amendment rights by subjecting her to cruel and unusual punishment without due process. The torture and coercion by defendant Lehto included yelling and screaming in plaintiff's face, intimidating and threatening the plaintiff with deportation and by denying the plaintiff to use the bathroom for several for several hours until the plaintiff made the false and stigmatizing statement, "I had sex with my father." U.S. Const. Amend. VIII and XIV.

75. The plaintiff relies on the plurality opinion of Chavez where the U.S. Supreme Court held that coercive questioning is actionable in §1983 action under the Fourteenth Amendment. See Chavez v. Martinez, 538 U.S. at 773 (plurality opinion of Thomas, J.) Id at 779 (Souter, J. ) Id at 787 (Stevens, J.) and Id 799 (Kennedy, J.). Chavez calls attention to "police torture or other abuse" as actionable under Fourteenth Amendment, Id at 773, and Justice Kennedy's opinion notes that "a constitutional right is traduced the moment torture or its close equivalents are brought to bear." Id at 789.

76. In the instant complaint defendant Lehto tortured, screamed at, yelled at the plaintiff. Defendant Lehto also intimidated and threatened the plaintiff with deportation, in addition defendant Lehto denied the plaintiff use of the bathroom until she made the coerced statements which were both false and stigmatizing. Defendant Lehto's behavoir of such cruel nature is a shock to human conscience.

77. The plaintiff asserts that defendant's behavior was intentional with a specific evil motive. The plaintiff further asserts that defendant Lehto's fierce drive to extract false statements from the plaintiff by using such grossly illegal means was his desire to manufacture a "second victim of Dr. Wamala", a "victim" who did not exist. By illegally creating

a "second victim" in Dr. Wamala's investigation, defendant managed to overcome the hurdle of probable cause and was able to arrest Dr. Wamala--- even though at that point his supervisors and others involved in in Dr. Wamala's investigation had determined that there was no probable cause to arrest Dr. Wamala according to Nashua Police policies and procedures. See A.40-41 attached. Defendant Lehto's relentless coercion of the plaintiff for two hours (see A.29) was intended to produce a "second victim" at all costs. To quote defendant's words, "After interviewing [Lwiza], we had a second victim who was claiming sexual abuse at the hands of [Dr.] Wamala." A.30. The plaintiff asserts that she was not and has never been a victim of Dr. Wamala instead the plaintiff is a victim of Defendant Lehto depraved personality.

78. The plaintiff asserts that when defendant Lehto decided on the course to "manufacture a second victim" through the plaintiff, the investigation of Dr. Wamala regarding Jessica's accusation, was pointing to releasing Dr. Wamala from the station because Jessica's allegations were not convincing. Defendant Lehto went on a mission to torture and coerce the plaintiff for two hours to produce a "second victim" so that defendant can arrest Dr. Wamala. The plaintiff's assertion is supported by facts taken directly from the under oath testimony of defendant Lehto before Judge Hampsey on 7/2/2007 (A.27-30) and 7/3/2007 (A.31-41). The plaintiff quotes a few excerpts below:

> [COUNSEL] When you came back- When you ended the interview and and you talked about this yesterday, you saidat that time it was just a he said, she said and that's why you didn't feel that there was any need to arrest [Dr. Wamala] bring him into custody, read him Miranda because it was just a he said, she said. You said yesterday that that was not enough to establish probable cause in your mind?

> [LEHTO] That's correct. Mr. Wamala would not have been taken into custody that evening had it remained Jessica's word against Mr. Wamala's word.

[COUNSEL] so just the naked accusation from Jessica, that's it, that's not enough?

[LEHTO] It's not sufficient for our procedures and policies within our division, no.

A.40-41. Defendants had already learned that Jessica is a deceitful. A.45-45a.

79. At about 8:00am when defendant Lehto initiated the coercion to force the plaintiff to become the manufactured "second victim" the investigation of Jessica's accusation of Dr. Wamala had produced the following:

i) Pamela Wamala had informed Officer Nadworny that she had not seen or heard any inappropriate sexual behavior of Dr. Wamala towards his daughters. See AFFIDAVIT paragraph 27. **Time was 11:50pm on 9/11/2006.**

ii) Jacob Wamala had told Det. Bergeron that he had not seen or even suspected of sexual abuse. He said of Jessica's allegations as "Caught me totally by surprise." A.44-45. **At 2:45am, 9/12/2006.**

iii) Lwiza Wamala (plaintiff) had told Det. Bergeron that she had never had sex wit her father (Dr. Wamala) and expressed disbelief at Jessica's accusations. AFFIDAVIT paragraghs 31-40. **Time was 2:00am to 3:00am on 9/12/2006.**

iv) Dr. Wamala had been interrogated for three hours and denied ever sexually assaulting any of his daughters. **Time was 3:15am to 6:15am, 9/12/2006.** See A.31-40.

v) Plaintiff's truthful statement was recorded by Det. Bergeron stating very clearly that she had not had sex with her father and that her father had never been sexually inappropriate to her. Again plaintiff maintained that Jessica's allegations are untrue and and calling the allegations "ridiculous." A.23-24. **Time was 6:53am on 9/12/2006.**

vi) Defendant Lehto tortures and coerces plaintiff into becoming a " second victim of Dr. Wamala." A.29-30. **Time 8:00am to 10:00am on 9/12/2006.**

v) Defendant Lehto arrests Dr. Wamala at **10:15am on 9/12/2006.** A.40

80. The plaintiff has demonstrated that defendant's illegal conduct was driven by evil intent. It is apparent through paragraphs 77, 78 and 79 above that defendant Lehto took an illegal approach of coercing the plaintiff and made her into a "second individual" to accuse Dr. Wamala of sexual assualt in order for defendant Lehto to satisy his desire of arresting Dr. Wamala and be prosecuted for crimes Dr. Wamala did not commit.

The plaintiff demonstrates through defendant's own under oath testimony confirming fulfilment of his evil intent before Judge Hampsey on 7/3/2007. See

A.29-30.  Quote:

[COUNSEL] Is that before or after you interview [Lwiza]** Wamala?

[LEHTO] After interviewing [Lwiza], we had a second victim. We a second individual who was claiming sexual abuse at the hands of Mr. Wamala. It was no longer a situation where we had Jessica Wamala's word against Mr. Wamala's word; he said, she said situation. We had two individuals claiming similar types of behavior on behalf of Mr. Wamala. At that point, in discussions and consultation with my supervisors, we decided that we had sufficient probable cause to make an arrest and therefore, I was going to interview Mr. Wamala one more time. However, at that point, he was not free to leave the Station and that decision was made after the interview with [Lwiza]. I therefore read Mr. Wamala his Miranda rights prior to conducting any further interview at that point.

A.30.

[Lwiza** was transcribed as Luisa in Court Transcripts]

81. The plaintiff notes that "psycological coercion" has been ruled to be sufficient to state a claim under the Fourteenth Amendment. See Cooper v. Dupnik, 963 F.2d 1220, 1245 (9th Cir. 1992)(en banc). Defendant Lehto's conduct went way beyond psycological coercion. In the instant case, forcing a daughter to falsely accuse her father so that you can arrest her father is beyond human logic. It is further inconceivable that a a police officer, defendant Lehto in this case extracts a false statement from the plaintiff and uses it to initiate and foster criminal proceedings without remorse. Detective Lehto's conduct is gross abuse of power that "shocks the consience" and "violates the decencies of civilized conduct." See Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Defendant Lehto's conduct is egregious and grave violation of plaintiff's constitutional rights.

82. Paragraphs 74, 75, 76, 77, 78, 79, 80 and 81 show that defendant Lehto's conduct offends the constitution of United States and was on notice that his conduct was actionable under 42 U.S.C.S. §1983. Therefore defendants Lehto, and all defendants named herein are liable as stated in CLAIM 7.

15

83. The plaintiff asserts that defendant Lehto violated her 1st and 14th Amendment rights when he distributed false and stigmatizing statements to the public, media, Prosecutor's office and in all court proceedings. Defendant Lehto distributed the false statements to his supervisor Scott Howe. Defendants Lehto, Howe and the Nashua Police Department in general contributed to dissemination of the false statement about the plaintiff to the media and public. The plaintiff asserts that the named defendants in this lawsuit distributed the false and stigmatizing statements about the plaintiff violating the plaintiff's constitutional rights prohibiting libel, slander and defamation to the plaintiff's liberty interest of good name. U.S. Const. Amend. I and XIV.

84. The plaintiff relies on Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245 (2002); Asbill v. Housing Authority, 726 F.2d 1499 (10th Cir. 1984); Gertz v. Robert Welch Inc., 418 U.S. 323, 350 (1974); Fiori v. Truck Drivers Local 170, 354 F.3d 84, 87 (1st Cir. 2004). The established law provides that "Freedom of speech has its limits it does not embrace certain categories of speech including defamation." Ashcroft v. Free Speech Coalition, supra.

85. In the instant complaint, defendant Bergeron, without coercion, threats or intimidation asked the plaintiff if she ever had sex with her father, the plaintiff gave the truthful answer, and defendant Bergeron recorded it. See A.23-24. Defendant Bergeron asked similar questions in many different ways and at different times, the plaintiff gave the same truthful answer, that she has never had sex with her father. Defendant Lehto was determined to turn the plaintiff into a "second individual claiming sexual abuse" (A.30) resorted to illegal means, coerced, threatened defendant with deportation, denied plaintiff use of bathroom until defendant Lehto extracted false statement out of the plaintiff.

16

The statements were involuntary and defendant Lehto with his training
as police officer and as a detective should have known that statements
obtained by coercion, threats and intimidation are unusable. Defendant
Lehto provided the false statements he himself knew were false to his
supervisor Scott Howe, to Hillsborough County Prosecutor's Office and
criminal proceedings were initiated. See A.1. The attached appendix,
a copy of defendant Lehto's report has the truthful statement as first
part of the report and the second half of his report has the false
statement. See A.26. Defendant Lehto in the report acknowledges that
the plaintiff was uncomfortable [for denial of bathroom use], but
defendant twists it to suit his evil motive. The false statements were
and still are frequently repeated in open court relating to State v.
Wamala proceedings. Defendants Lehto, Howe, Nashua Police Department
and the City of Nashua are all responsible in disseminating such false
and stigmatizing statement and did violate the plaintiff's liberty
interest of her good name.

86. In the defamation of character legal assertion, plaintiff relies on Asbill.
"Damage is done to liberty interest of good name if the information is
false and stigmatizing." Asbill v. Housing Authority, 726 F.2d 1499 (10th
Cir. 1984). See also Gertz v. Robert Welch Inc., 418 U.S. 323, 350 (1974).
(describing "customary types of actual harm inflicted by defamatory
falsehood include impairment of reputation and standing in community,
personal humiliation, and mental anguish and suffering"). See also
Fiori v. Truck Drivers Local 170, 354 F.3d 84, 87 (1st Cir. 2004)
(noting that "emotional distress need be not more than that 'outrage'
and 'anger' upon seeing the libelous statements since mental distress
is the natural result of libel").

87. The plaintiff is further supported by the Tenth Circuit. Relying on the
U.S. Supreme Court, the Tenth Circuit wrote, 'The Supreme Court has

indicated that for statements to be stigmatizing they must rise to such a serious level as to place the [person's] good name, reputation, honor, or integrity at stake. Board of Regents v. Roth, 408 U.S. 564, 573 (1971). As an example, the Court has noted that a charge of dishonesty or immorality would be stigmatizing. Id. Such charges attach like a "badge of infamy" to a [person].' Asbill v Housing Authority, 726 F.2d at 1503. In the instant complaint, the plaintiff got a double whammy being hit by dishonesty when she testified at trial challenging her credibility with the false statement; and second whammy is the stigmatizing effect the two examples the U.S. Supreme Court said attach like a "badge of infamy." Id. The Ninth Circuit put it more clearly "incesto005, a particularly prejudicial taboo." United States v. Curtain, 443 F.3d 1084, 1094 (9th Cir. 2006).

88. The plaintiff asserts that these false and stigmatizing statements are widely circulated in media, internet and all court proceedings of State v. Wamala, The plaintiff asserts that she almost confronts these false statements on a daily basis, either through questions by friends, or church members or workmates or news or internet. Plaintiff asserts that it is a constant emotional distress with no way of escaping. Further, the plaintiff asserts the she is under unending pain, mental anguish and suffering because of these false statements floating everywhere.

89. Based on paragraphs 84, 85, 86, 87 and 88, defendants Lehto, Howe, Nashua Police Department, City of Nashua and all defendants named herein should have known and were certainly on notice that their conduct and the resulting natural consequences are actionable under 42 U.S.C.S. §1983. Therefore all the defendants are liable as stated in CLAIM 8.


90. The plaintiff asserts that defendant Lehto violated her 4th Amendment

right prohibiting "unreasonable search of a person" on 9/12/2006 when defendant Lehto collected DNA samples from plaintiff against her will. U.S. Const. Amend. IV.

91. The plaintiff relies on Florida v. Royer, 460 U.S. 491 (1983) ("State has burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority."). See Ohio v. Robinette, 685 N.E.2d 762, 771 (Ohio 1997) (holding that consent to search car was mere "submission to 'claim of lawful authority' rather than consenting as a voluntary act of free will"). The plaintiff further relies on Morrow where "[The Fourth Circuit] recognized that the government must shoulder the burden of proving that an individual "freely and intelligently [gave her] unequivocal specific consent, uncontaminated by duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 236 (4th Cir. 1984).

92. The plaintiff has already layed out the nature and circumstances that involved defendant Lehto towards the plaintiff and will only be repeated here briefly for purposes of this claim. The plaintiff was ordered to sign the waiver by telling the plaintiff to sign. The plaintiff signed the waiver involuntarily. Prior to plaintiff signing the waiver, she was coerced and forced to make a false and disgusting statement that "she had sex with her father." The plaintiff had been screamed at, yelled at, intimidated and threatened with being deported. Before signing the waiver the plaintiff was in serious discomfort from denial of bathroom use. The plaintiff had indicated earlier that she did not want her DNA samples taken but the defendant ignored her request. The plaintiff at time of signing the waiver had been detaining at Nashua Police Station for about 12 hours (from 11:50pm on 9/11/2006 to 11:40am on 9/12/2006).

The plaintiff had been questioned several times. The plaintiff was exhausted from questioning and from lack of sleep as she had spent the whole night at the Police Station. The plaintiff was hungry from lack of food. Given the events and nature of setting (detained at the Police Station), the plaintiff asserts, the waiver form signed was a mere submission to authority rather than the free, knowing and voluntary consent as required by law and defendant Lehto a trained police officer and detective should have known that he is violating the plaintiff's right prohibiting unreasonable search.

93. In the instant caomplaint, it is clear as expressed in paragraphs 90, 91 and 92 that defendant Lehto had clear notice that his conduct violated the plaintiff's right against unreasonable search and is actionable under 42 U.S.C.S. §1983. Therefore defendant Lehto and all defendants are liable as stated in CLAIM 9.


94. The plaintiff asserts that when she asked defendant Lehto to allow her to go to school and defendant Lehto denied her to do so, defendant Lehto violated the plaintiff's 14th Amendment right to be free to pursue education. U.S. Const. Amend. XIV.

95. The plaintiff relies on Allgeyer v. Lousiana, 165 U.S. 578, 590 (1897), Deshaney v. Winnebago, 489 U.S. 189, 199-200 (1989) and Washington v. Glucksberg, 521 U.S. 702, 761 (1997).

96. In the above claim the plaintiff evokes, the core and national historical foundation of democracy of this country: to be free and persue happiness. The plaintiff relies on case law as far back as the year 1897. In that year the U.S. Supreme Court held, "Fourteenth Amendment liberty includes the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful calling; to pursue any livelihood

or avocation." <u>Allgeyer v. Lousiana,</u> supra.

97. The plaintiff futher relies on <u>Deshaney,</u> where the U.S. Supreme Court
held, "the State's affirmative act of restraining the individual's freedom
to act on his own behalf through...restraint of personal liberty...which
is the deprivation of liberty triggering the protections of the Due
Process Clause." <u>Deshaney v. Winnebago,</u> supra.

98. The plaintiff's claim of denial to go to school is further supported
by <u>Glucksberg</u>. Reiterating its long-standing position, the U.S. Supreme
Court re-declared, "...the Fourteenth Amendment protected the right
of the individual...to engage in any of the common occupations of life
to acquire useful knowledge,...and generally to enjoy privileges long
recognized at common law as essential to the orderly persuit of happiness
by free men." <u>Washington v. Glucksberg,</u> 521 U.S. at 761 (quoting <u>Meyer</u>
<u>v. Nebraska,</u> 262 U.S. 390, 399 (1923)).

99. In the instant complaint defendant Lehto, on 9/12/2006 restrained the
liberty of the plaintiff and denied her freedom to go to school to acquire
useful knowledge violating her 14th Amendment right. The established law
as pointed out in paragraphs 96, 97, 98 and 99 put defendant Lehto and
all defendants that such conduct  is actionable under 42 U.S.C.S. §1983.
Therefore defendant Moushegian and all defendants are liable as stated
in CLAIM 10.

100. The plaintiff asserts that all ten claims are viable claims each in
its own right. The plaintiff has demonstrated that each of the ten claims
state with specifity the exact countours of the right violated or deprived.
Each of the ten claims name the defendants herein violated or deprived
the right of the plaintiff. The plaintiff has also stated with specificity
the facts and circumstances (through this complaint, the accompanying
AFFIDAVIT FOR LWIZA and the Appendix of all attachment) that gave rise to
each violation or depravation. Also, the plaintiff has stated the harm

caused on the day of infraction 9/12/2006 and the recurring and unending
suffering resulting from the defendants' actions or lack thereof. The
plaintiff relies on Malley where the U.S. Supreme Court held that Under
§1983 actions flows against the defendant for all damages that are the
"natural consequences of his actions." Malley v. Briggs, 475 U.S. 335,
344 (1986).

## VI   SUPEVISORY AND MUNICIPAL LIABILITY

101. The plaintiff presents that supervisors of Nashua Police Department
and the City of Nashua in charge of the Nashua Police Department are
all liable in this lawsuit. The plaintiff asserts that the 21 hours she
was detained at Nashua Police Station the supervisors must have known
that she was held and either approved it or ignored to facilitated the
plaintiff's release. The supervisors are supposedly monitoring the police
officers and detectives' actions, the fact that the supervisors allowed
plaintiff to be detained that long, allowed the plaintiff to be coerced
and tortured inside Nashua Police Station makes supervisors, Nashua Police
Department and the City of Nashua liable liable for approving the actions
or lack of stopping those actions perpetrated by their employees.

102. The plaintiff relies on Redman v. County of San Diego, 942 F.2d 1435,
1446 (9th Cir. 1991). The Ninth Circuit held that supervisory liability
may be found in civil rights actions even if the supervisors in question are
not directly involved in the acts leading to the constitutional
deprivation. Id. In the instant case evidence show that there is direct
supervisory involvement. As already stated in the AFFIDAVIT defendant
Moushegian was sympathetic but "lacked authority" to release the plaintiff.
In paragraph 40 of AFFIDAVIT defendant Bergeron tells the plaintiff that

it is not up to [Bergeron] to release her. And in paragraph 45 of the
AFFIDAVIT in a very sympathetic voice tells plaintiff, "if it was up
to me, I would let you go but I have been told  by my Supervisors that
there is another detective who wants to talk to you." From that point
on defendant Bergeron did not come back to talk to the plaintiff. As
for defendant Lehto he also implicates his Supervisors. Lehto stated
under oath " And at that point, in discussions and consultation with
my supervisors, we decided that we had sufficient probable cause at that
point to make an arrest..." A.30.   In any case established case law holds all
defendants herein liable, the plaintiff further relies on Putman. The Eighth
Circuit held that, even absent supervisory authority, however a party's
position of responsibility may impose on him duty to intervene to prevent
a constitutional violation. Putman v. Gerloff, 639 F.2d 415 (8th Cir. 1981).
In the instant complaint, Nashua Police Chief and Nashua Police Department
together with the Mayor of Nashua City and the City of Nashua are all in
positition to have stopped such abuse of power by named defendants who are
employees of Nashua Police Department.

The plaintiff also relies on DiMarzo v. Cahill, 575 F.2d 15, 17-18 n.3
(1st Cir. 1978) where the First Circuit stated that liability under §1983
may be imposed both for action that deprives a plaintiff of a constitutional
right and for failure to act, to prevent such a deprivation. Id (quoting
Monroe v. Pape, 365 U.S. 167 (1961)).

103. Therefore according to established law as partially enumerated in paragraphs
101 and 102 all defendant Bergeron's direct and indirect supervisors, all
defendant Lehto's direct and indirect supervisors, Nashua Police Department
and its Chief of Police, together with the City of Nashua with its Mayor
are all liable in this lawsuit.

**VII  ALLEGATIONS**

CLAIM 1

104- 1a. Defendant Lehto is liable both in his individual and official

capacity for acting under the color of law for unreasonable seizure of

the plaintiff on 9/12/2006 at Nashua Police Station, illegally detaining

her for 21 hours violating her 4th Amendment right. Such action was

demonstrated to be done with willful, malicious and evil intent to

plaintiff's constitutional rights.

1b. Defendant Bergeron is liable both in his individual and official capacity

for acting under color of law for unreasonable seizure of the plaintiff on

9/12/2006. Defendant Bergeron recorded the truthful statement and passed

it on to his supervisors. Detective Bergeron was sympathetic to the

plaintiff's detention and told plaintiff that if it was upto defendant

Bergeron the plaintiff would have been released. Although defendant Bergeron

told plaintiff that she cannot go home his actions were not malicious or

intentionally intended to punish the plaintiff.


1c. Defendant Lehto Supervisors, defendants Chief Nashua Police Department,

Conley and Hefferan, defendant Bergeron Supervisors, defendant Nashua Police

Department, defendant Streeter Mayor of Nashua, Defendant City of Nashua

are all liable in their individual and official capacity for approving or

failure to release the plaintiff when she was held for 21 hours on 9/12/2006

at Nashua Police Station in violation of the plaintiff's 4th Amendment right.

Such action or lack thereof demonstrates deliberate indifference or utter

disregard or both to the plaintiff's constitutional rights, acting under

the color of law.

CLAIM 2

105- 2a. Defendant Lehto is liable in his individual and official capacity
for acting under color of law and violating the plaintiff's 8th and 14th
Amendment rights by denying the plaintiff to use the bathroom for several
hours. Defendant Lehto's conduct  subjected plaintiff to cruel and unusual
punishment of extreme discomfort. Defendant Lehto's conduct was malicious,
reckless, wanton and motivated by evil intent.

2b. Defendant Lehto Supervisors, defendants Chief of Police  Conley and
Hefferan, defendant Nashua Police Department, defendant Streeter Mayor
of Nashua, defendant City of Nashua are all liable in individual and
official capacities for approving or failure to stop defendant Lehto
from violating the plaintiff's 8th and 14th Amendment rights on 9/12/2006
right inside Nashua Police Station. Such action or inaction demonstrates
deliberate indifference or utter disregard or both to the plaintiff's
constitutional rights, acting under color of law.

CLAIM 3

106- 3a. Defendant Lehto is liable both in his individual and official
capacity for dictating to plaintiff what to speak and recording it on
9/12/2006 in violation of plaintiff's 1st Amendment right. Such action
demonstrates malicious and deliberate intent to violate plaintiff's
constitutional rights.

3b. Defendant Lehto's Supervisors, defendants Chief Nashua Police Conley
and Hefferan, defendant Nashua Police Department, defendant Streeter
Mayor of Nashua, defendant City of Nashua are all liable in individual
and official capacity for approving or failure to stop defendant Lehto

from dictating to plaintiff what to speak on 9/12/2006 at Nashua Police

Station. Such action or lack thereof demonstrates deliberate indifference

or utter disredard or both to the plaintiff's constitutional rights,

acting under the color of law.

CLAIM 4

107- 4a. Defendant Lehto is liable both in his individual and official

capacity for interfering with the plaintiff's right to provide truthful

testimony by dictating to her false testimonial statements which defendant

recorded and provided to prosecutor, in turn the prosecutor used the

false statement to interfere with the plaintiff's truthful testimony.

Such depraved conduct by defendant Lehto demonstrates willful, malicious

and evil intent to violate the plaintiff's 1st Amendment right, acting

under the color of law.


4b. Defendant Lehto Supervisors, defendants Chief of Nashua Police Conley

and Hefferan, defendant Nashua Police Department, defendant Streeter

Mayor of Nashua, defendant City of Nashua are all liable in individual

and official capacity for approving or failure to stop defendant Lehto

from infringing on the plaintiff's 1st Amendment right. Such action or

lack thereof demonstrates deliberate indifference or utter disregard

or both to the plaintiff's constitutional rights, acting under color

of law.


CLAIM 5

108- 5a. Defendant Lehto is liable both in his individaul and official

capacity acting under color of law for providing coerced and false

statements he obtained from the plaintiff to the court proceedings of

26

State v. Wamala. Defendant Lehto violated the plaintiff's 5th Amendment right by having a coerced and false statement used against the plaintiff in a criminal trial. Such action demonstrates willful, malicious and evil intent by defendant Lehto to violate the plaintiff's 5th Amendment right, acting under color of law.

5b. Defendant Lehto Supervisors, defendants Chief of Nashua Police Conley and Hefferan, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua are all liable in individual and official capacity for approving or failure to stop defendant Lehto from violating plaintiff's 5th Amendment right. Such action or lack thereof demonstrates deliberate indifference or utter disregard or both to the plaintiff's constitutional rights, acting under color of law.

CLAIM 6

109- 6a. Defendant Lehto is liable for transgressing plaintiff's due process when he did not provide food to the plaintiff during the time of 21 hours when defendant Lehto had illegally detained the plaintiff on 9/12/2006 at Nashua Police Station. The due process protection is guaranteed under the 14th Amendment. Defendant Lehto is also liable for the pain and discomfort sustained by the plaintiff during the 24 hour stretch the plaintiff went without food because defendant Lehto denied her to leave Nashua Police Station. The pain and suffering sustained by the plaintiff constituted cruel and unusual suffering prohibited by the 8th Amendment applicable to the States through the 14th Amendment. Defendant Lehto's actions violated both the 8th and 14th Amendments and must be held liable. Such action or intentional denial to provide food violated the plaintiff's constitutional rights. Defendant Lehto's conduct was intentional and malicious filled with evil intent acting under the color of law.

27

6b. Defendant Lehto SUpervisors, defendants Chief of Police Conley and Hefferan, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant CIty of Nashua are liable in individual and official capacity for approving or ignoring defendant Lehto transgression of plaintiff's rights of not providing her with food which violated both the 8th and 14th Amendment rights of the plaintiff. Such action or inaction demonstrates deliberate indifference or utter disregard or both to the plaintiff's constitutional rights, acting under the color of law.

CLAIM 7.

110. 7a. Defendant Lehto is liable for coercing the plaintiff by threats, denial of bathroom use, yelling and screaming and threat of deportation all for the sole purpose of obtaining false statement from the plaintiff. Defendant Lehto's conduct of purposeful evil motive to extract a false statement from plaintiff by torturous methods violated the plaintiff's 8th and 14th Amendment rights and caused on going emotional trauma.

7b. Defendant Lehto's Supervisors, defendants Chief of Police Conley and Hefferen, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua are all liable in individual and official capacity for approving or failure to stop defendant Lehto from coercing and torturing plaintiff right inside Nashua Police Station where defendant Lehto violated plaintiff's 8th and 14th Amendment rights on 9/12/2006. Such action or inaction demonstrates deliberate indifference or utter disregard or both to plaintiff's constitutional rights, acting under color of law.

28

CLAIM 8

111- 8a. Defendant Lehto is liable for libel, slander and defamation of
of character to liberty interest of plaintiff's good name. Defendant's
intentional distribution of false and stigmatizing statement which the
defendant himself knew were false and coerced, damaged the liberty
interest of plaintiff's good name, a right protected by the 1st and 14th
Amendments, therefore defendant Lehto must be held liable. Defendant's
actions were executed willfully, maliciously and with evil intent and
callous indifference to plaintiff's constitutional rights. Defendant
must be held liable both in his individual and official capacity, acting
under color of law.

8b. Defendant Howe is liable for libel, slander and defamation of character
to liberty interest of plaintiff's good name. Defendant Howe intentionally
distributed false and stigmatizing statements that damaged plaintiff's good
name a protected right by the 1st and 14th Amendments, hence defendant Howe
must be held liable for his actions conducted with willful and callous
indifference to plaintiff's constitutional rights. Defendant Howe is
liable both in his individual and official capacity, acting under color
of law.

8c. Defendant Lehto Supervisors, defendants Cheif Nashua Police Conley
and Hefferan, defendant Nashua Police Department, defendant Streeter
Mayor of Nashua, defendant City of Nashua are all liable in individual
and official capacity for approving distribution or failure to stop the
distribution of false and stigmatizing information that damaged plaintiff's
good name in violation of plaintiff's 1st and 14th Amendment rights. Such
action of failure to act demonstrate deliberate indifference or utter disregard
or both to the plaintiff's constitutional rights, acting under color of law.

29

112- 9a. Defendant Lehto is liable both in his individual and official capacity
   for acting under color of law for involuntary (illegal) search of the
   plaintiff when he collected DNA samples from the plaintiff against her
   will on 9/12/2006 at Nashua Police Station violating her 4th Amendment
   right. Such action demonstrates willful and callous indifference to
   plaintiff's constitutional rights.

   9b. Defendant Lehto Supervisors, defendants Chief Nashua Police Conley
   and Hefferan, defendant Nashua Police Department, defendant Streeter
   Mayor of Nashua, defendant City of Nashua are all liable in their individual
   and official capacity for approving or failure to stop defendant Lehto
   from illegally obtaining DNA samples from the plaintiff on 9/12/2006 in
   violation of her 4th Amendment right. Such action or lack thereof to
   prevent violation demonstrates deliberate indifference or utter disregard
   or both to the plaintiff's constitutional rights, acting under color
   of law.

CLAIM 10

113- 10a. Defendant Lehto is liable both in his individual capacity and official
   for acting under color of law for denying plaintiff to go to school on
   9/12/2006, denying plaintiff liberty to pursue education on 9/12/2006
   which violated plaintiff's 14th Amendment right. Such action demonstrates
   willful, malicious, reckless and deliberate intent to violate the
   plaintiff's rights.

   10b. Defendant Lehto Supervisors, defendants Chief of Police Nashua Conley
   and Hefferan, defendant Nashua Police Department, defendant Streeter
   Mayor of Nashua, defendant City of Nashua are all liable in their individual
   and official capacity for approving or failure to stop defendant Lehto

from denying plaintiff to go to school on 9/12/2006 while she was illegally held at Nashua Police Station. Such action or inaction demonstrates deliberate indifference or utter disregard or both to plaintiff's constitutional rights, acting under color of law.

## VIII  DAMAGES RECOVERABLE

114. The plaintiff has been in alot of agony for the last three years (it about 3 years at the time of filing this complaint). It is has been a a painful daily experience living with the trauma caused by Nashua Police on 9/12/2006 and the daily reminders of the result caused by such depraved conduct executed on the plaintiff by Nashua Police. Nothing has been able to alleviate the pain. The plaintiff comes to the Federal Court with optimism that when the defendants pay compensatory and punitive damages it will be her beginning for healing. The named defendants in this lawsuit transgressed the plaintiff's constitutional rights, consequently the law provides that the defendants must compensate the plaintiff.

The plaintiff relies on Harlow v. Fitzgerald, 457 U.S. 814 (1982) where the U.S. Supreme Court held "when government officials abuse their offices, actions for damages offer the only realistic avenue for vindication of constitutional guarantees." Id. The plaintiff seeks both compensatory and punitive damages.

115. The plaintiff is justified to seek punitive damages against the defendants because their conduct was reckless, malicious, egregious and driven with evil intent of putting Dr. Wamala in prison---an innocent man.

The plaintiff gets nauseous everytime she encounters statements like these:

Statement 1

    "The State accuses Dr. Wamala of various sexual assault-related offenses against his three daughters - **Jessica, Lwiza and Theresa Wamala.**"
       All Court Records in State v. Wamala. For example see A.1.

Statement 2

    "Severine Wamala, 45, of Nashua was arraigned on 19 counts, including 11 counts of aggravated felonious sexual assault. The Charges came from **three women.**" NewsCenter5's Jacker Haper, WCVB-TV Boston, MA on 9/13/2006.

Statement 3

    "Severine Wamala, who is also a prominent chess player, is accused of sexually assaulting **three women.**" Associated Press on 9/13/2006.

Statement 4

    "Wamala, formerly of 6 Danforth Road, Unit 22 Nashua, was arrested last month by Nashua Police on 19 Counts of incest and 11 counts of aggravated felonious sexual assault involving **three young women.**"
       Lisa Redmond, Lowell SUN, MA  on 10/30/2006.

Statement 5

    "Police[*] charge Wamala repeatedly raped **three young women.**" [*Nashua Police]
       Andrew Wolfe, Nashua Telegraph, NH, on 8/13/2007.

Statement 6

    "Severine Wamala, 45, of 6 Danforth Road, No. 22, was arraigned yesterday in Nashua District Court on 11 counts of aggravated felonious sexual assault and 19 counts of incest. According to court documents, Wamala allegedly sexually assaulted **three female family members.**"
       Son Hoang, Union Leader, Machester, NH, on 9/14/2006.

Statement 7

    "Lowell High School Students knew [Dr. Wamala], the 45-year-old Math Teacher as a nattily dressed taskmaster who insisted on excellence and and could explode in rage whe he caught students slaking off. Earlier this month, he was named Head of Lowell High's Math Department. But **three young women** , [Nashua] Police...said yesterday, Wamala was a terror."
       James Vaznis and Raja Mishra,  The Bosto Globe, MA, on 9/14/2006.


As Statement 1 shows all public court hearings and every court record

names **"Lwiza Wamala"** as Dr. Wamala's victim, albeit, I have never been Dr. Wamala's

victim. It really hurts. I am a victim of Nashua Police and everytime I read

statement 1, feel victimized again and again by Nashua Police.

In <u>Statements 2 to 7</u> that is a minute sampling of how news exploded in
the media of Dr. Wamala being arrested for "raping" **three family female
members."** There are thousands and may be millions of such articles
considering that Dr. Wamala was well known in the USA and some other
parts of the world like Great Britain, Germany, Kenya, Uganda and others.
 Even, some media labored not to write real names of the so called victims,
Dr. Wamala is publicly known to have three daughters--**Jessica, Lwiza and Theresa.**
The plaintiff who has never had any sexual relations with her father
will forever be associated with incest, permanent damage done to her
name. In addition, the plaintiff carries the unnecessary burden of Dr. Wamala
serving 40 years in New Hampshire Prison for crimes he did not commit.
The plaintiff was forced to carry this burden, because she was tortured
to become the "second individual accusing Dr. Wamala" without the plaintiff's
false statement, Dr. Wamala would not have been arrested, or prosecuted
or imprisoned for 40 years for crimes he did not commit. Again See A.30, A.40-41.

    The damage caused by detective Lehto and Nashua Police Department
to the plaintiff will never be undone. It is an on going pain for ever.
Punitive damages are justified.

116. In pressing for punitive damages, the plaintiff relies on <u>Smith v. Wade,</u>
where the U.S. Supreme Court held that 'a jury may be permitted to assess
punitive damages in addition to compensatory damages in a §1983 action
when the defendant's conduct involved reckless or callous indifference
to the plaintiff's federally protected rights. <u>Smith v. Wade</u>, 461 U.S.
30 (1983). The plaintiff further relies on <u>Malley v. Briggs</u>, 475 U.S.
335, 344 (1986), where the U.S. Supreme Court held that 'liability under
§1983 action flows against the defendant [s] for all damages that are
"natural consequences of [their] actions.'" <u>Id</u>. The plaintiff asserts
 that the conduct of defendant Lehto and Nashua Police department is

beyond reckless or callous indifference it it pure evil behavior that
"shocks the conscience" and "violates the decencies of civilized conduct."
Sacramento v. Lewis, supra. It is nauseating. No amount of compansatory
or punitive damages received from the defendants will erase what the
defendants intentionally did to the plaintiff, but a certain amount is
necessary to begin the healing process.

117.
DAMAGES FOR CLAIM 1

    1a. Order defendant Lehto to be held liable in his individual and official
capacity and be ordered to pay compensatory damages in the amount of
$1 million and punitive damages in the amount of $2 million.

    1b. Order defendant Bergeron to be held liable in his individual and
official capacity to be ordered to pay   nominal   damages in the amount
of one dollar and NO punitive damages.

    1c.    . Order defendant Lehto Supervisors, defendant Bergeron Supervisors,
defendants Chief Nashua Police Conley and Hefferan, defendant Nashua
Police Department, defendant Streeter Mayor of Nashua, defendant City
of Nashua to be held in their individual and official capacity and be
ordered to pay compensatory damages in the amount of $1 million and
punitive damages in the amount of $2 million.

118.
DAMAGES FOR CLAIM 2

    2a. Order defendant Lehto to be held liable in his individual and official
capacity and be ordered to pay compensatory damages in the amount of
$1 million and punitive damages in the amount of $2 million.

2b. Order defendant Lehto Supervisors, defendants Chief Nashua Police Conley
and Hefferan, defendant Nashua Police Department, defendant Streeter
Mayor of Nashua, defendant City of Nashua all to be held in their

individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

119.
DAMAGES FOR CLAIM 3

3a. Order defendant Lehto to be held liable in his individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

3b. Order defendant Lehto Supervisors, defendants Nashua Police Chief Conley and Hefferan, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua all to be held in their individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

120.
DAMAGES FOR CLAIM 4

4a. Order defendant Lehto to be held liable in his individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

4b. Order defendant Lehto Supervisors, defendants Nashua Police Chief Conley and Hefferam, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua all to be held liable in their individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

121.
DAMAGES FOR CLAIM 5

5a. Order defendant Lehto to be held liable in his individual and official capacity and be ordered to pay compensatory damages in the amount of

$1 million and punitive damages in the amount of $2 million.

5b. Order defendant Lehto Supervisors, defendants Nashua Police Chief
Conley and Hefferan, defendant Nashua Police Department, defendant
Streeter Mayor of Nashua, defendant City of Nashua all to be held liable
in their individual and official capacity and be ordered to pay
compensatory damages in the amount of $1 million and punitive damages
in the amount of $2 million.

122.
DAMAGES FOR CLAIM 6

6a. Order defendant Lehto to be held liable in his individual and official
and be ordered to pay compensatory damages in the amout of $10,000 and
punitive damages in the amount of $100,000.

6b. Order defendant Lehto Supervisors, defendant Nashua Police conley
and Hefferan, defendant Nashua Police Department, defendant Streeter
Mayor of Nashua, defendant City of Nashua all to be held liable in their
individual and official capacity and be ordered to pay compensatory
damages in the amount of $10,000 and punitive damages in the amount
of $100,000.

123.
DAMAGES FOR CLAIM 7

7a. Order defendant Lehto to be held liable both in his individual and
official capacity and be ordered to pay compensatory damages in the
amount of $2 million and punitive damages in the amount of $4 million.

7b. Order defendant Lehto Supervisors, defendant Nashua Police Chief
Conley and Hefferan, defendant Nashua Police Department, defendant
Streeter Mayor of Nashua, defendant City of Nashua all to be held liable in
their individual and official capacity and be ordered to pay compensatory

damages in the amount of $2 million and punitive damages in the amount $4 million.

**124.**
**DAMAGES FOR CLAIM 8**

8a. Order defendant Lehto to be held in his individual and official capacity and be ordered to pay compensatory damages in the amount of $3 million and punitive damages in the amount of $6 million.

8b. Order defendant Howe to be held in his individual and official capacity and be ordered to pay compensatory damages in the amount of $3 million and punitive damages in the amount of $6 million.

8c. Order defendant Lehto Supervisors, defendants Chief Nashua Police Conley and Hefferan, defendant Nashua Police Department, defandant Streeter Mayor of Nashua, defendant City of Nashua all to be held liable in their individual and official capacity and be ordered to pay compensatory damages in the amount of $3 million and punitive damages in the amount of $6 million.

**125.**
**DAMAGES FOR CLAIM 9**

9a. Order defendant Lehto to be held liable in his individual and and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

9b. Order defendant Lehto Supervisors, defendants Nashua Police Chief Conley and Hefferan, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua all to be held liable in their individual and official capacity and be ordered to pay compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

126.

## DAMAGES FOR CLAIM 10

10a. Order defendant Lehto to be held in his individaul and official capacity and be ordered to pay compensatory damages in the amount of $10,000 and exemplary damages in the amount of $100,000.

10b. Order defendant Lehto Supervisors, defendant Nashua Police Chief Conley and Hefferan, defendant Nashua Police Department, defendant Streeter Mayor of Nashua, defendant City of Nashua all to be held liable in their individual and official capacity and be ordered to pay compensatory damages in the amount of $10,000 and enhanced compensatory damages in the amount of $100,000.

127 Litigation fees.

Order the defendants to pay all costs, attorney fees, consultation fees, all expenses and all consequential costs incurred by plaintiff by bringing forth and litigating the instant complaint as provided for in Federal statute 42 U.S.C.S. §1988.

## IX INTERIM RELIEF REQUESTED

128.    Declaratory relief by ordering that denying a person to leave Nashua Police Station when he/she is not under arrest is a violation of the individual's Fourth Amendment right and mandatory injuction ordering that practice to stop forthwith at Nashua Police Department.

129. Declaratory relief by ordering that forcing any person to make statements against their will is a violation of individual's First Amendment right and mandatory injuction ordering that practice to cease forthwith at Nashua Police Department.

130. Declaratory relief by ordering that forcing an individual to give DNA
samples against their will is a violation of the individual's Fourth
Amendment right and mandatory injunction ordering that practice to cease
forthwith at Nashua Police Department.

131. Declaratory relief ordering that disseminating coersed statements to
public, media or prosecutor's office, when Nashua Police officials know
those statements to be false is a violation of individual's First and
and Fourteenth Amendment rights and mandatory injuction ordering that
practice to cease forthwith at Nashua Police Department.

132. Declaratory relief by ordering that denying an individual to leave Nashua
Police Station to go and engage in common activities of life, namely
denied to go to school, is a violation of individual's Fourteenth
Amendment which guarantees the liberty; and mandatory injuction ordering
that practice to cease forth with at Nashua Police Statation.

133. Declaratory relief by ordering that not providing food to individuals
who are denied liberty to leave Nashua Police Station transgresses the
substantive limits set by the Fourteenth Amendment and mandatory
injuction ordering that Nashua Police officials have imposed
constitutional duty of catering to the well-being of the detained
individual in particular, must provide food.

134. Declaratory relief by ordering that emotionally torturing individuals,
screaming at individuals, yalling at individuals right in individual's
face are violations of constitutional rights protected by the 8th and
14th Amendments and mandatory injuction ordering that practice to cease
forthwith at Nashua Police Department.

135. Declaratory relief that the use of "deportation" as a threat to get
information out of an interviewee is so powerful because it renders the
interviewee helpless and puts him at the mercy of the police officer
and the interviewee will say what the police officer wants to hear, however
such a method is unconstitutional and in violation  of the 14th Amendment
therefore mandatory injuction is necessary to order Nashua Police
Department to stop that method forthwith.

136. Declaratory relief by ordering that a constitutional right is traduced
the moment torture or its close equivalents are brought to bear, for
example denying an individual to use a bathroom for several hours or
telling a daughter to say that she had sex with her father when it is not
true are two forms of cruel and unusual punishments that "shocks the
conscience and violates the decencies of civilized conduct," therefore a
mandatory injuction is necessary to order Nashua Police Department to cease
from that kind of torture forthwith.

137. Grant other relief deemed just.

Respectfully submitted

09/08/09
Date

Lwiza Wamala, pro se
20 Marshall Terrace
Lowell, MA 01854

**OATH AND AFFIRMATION**

I, LWIZA WAMALA, HEREBY SWEAR UNDER THE PENALTY OF PERJURY THAT THE INFORMATION
IN THIS COMPLAINT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Lwiza Wamala, pro se

**DEMAND FOR JURY TRIAL**

I Lwiza Wamala, hereby request for a jury trial for the above complaint.

Lwiza Wamala, pro se